## MASTEN *vs.* MASTEN.

A marriage was celebrated in this State, and the parties continued to reside here for several years; the husband afterwards left his wife and went to another State, providing no home for her, nor any support. Thereupon the wife left this State, in order to maintain herself and children. After her departure the husband returned to this State, and continued to reside here at the time the libel was filed.—*Held*, that there was no desertion on her part; and that this court has jurisdiction of her libel for divorce from her husband, she having a domicil here by virtue of his residence in the State.

Proof of adultery on the part of a libellant, is no bar to a divorce grounded on the subsequent adultery of the libellee, if there has been an intervening condonation of the libellant's crime.

LIBEL for a divorce, filed Nov. 24th, 1843, alleging as the causes, extreme cruelty, desertion and adultery.

Defence, adultery of the libellant.

The facts are sufficiently stated in the opinion of the court.

*W. P. Flanders,* for the libellant, cited 2 *Kent's Com.* 97, 100, 125; 2 *Phillimore* 125, *Reeves* vs. *Reeves;* 4 *Haggard* 178; 3 *Haggard* 338; 2 *Haggard* 171.

*M. W. Tappan,* for the libellee, cited 2 *Kent's Com.* 100; 1 *Kinne's Law Comp.* 325; 4 *Page's R.* 437; 2 *Ditto* 111.

PARKER, C. J. It appears, from the evidence before us, that the libellant has her personal residence in Boston, in Massachusetts, and that she has resided there, with the exception of temporary absences, for several years. A preliminary question arises, whether we have jurisdiction of the case. It appears farther, that the parties were married at New-London, in this State, in May, 1820, and that they resided here together until 1837. In the fall of 1836 the husband made a bargain for the sale of his farm in Sutton, gave up the possession in April, 1837, and shortly afterwards went to Ashburnham, in Massachusetts, as he said to get work, leaving her to take care of herself. Some weeks after, he returned, and she proposed to put their money together, buy

a farm and take care of the family; which he refused to do, and went back to Ashburnham. She then, having no sufficient means of subsistence, went to Boston, and has supported herself and children there ever since. Some time afterwards he returned, and has resided in this State ever since. In 1838 there was some negotiation respecting her return, but the terms he proposed were not such as she was willing to accept. Without entering into a detail of the circumstances attending his leaving her as above specified, or an examination of the conditions upon which he " guessed" she might come back, it is sufficient to say, that if he did not desert her and thus compel her to seek a subsistence by a removal to another place, he provided no home for her here, and furnished no support for her, and they parted under such circumstances that he had no right to complain of her absence. She did not desert him. She has the right, therefore, to claim a domicil here, in virtue of his residence here. If there be cause for a divorce, there is no other jurisdiction to which she can resort to make the application.

In examining the case upon the merits, we find evidence of ill usage and abuse, commencing not long after the marriage, which, at that time, might, perhaps, have sustained a libel founded upon that allegation, but the parties lived together many years afterwards. There is no evidence of actual violence for some time previous to their separation, and when that took place it was not upon any allegation of cruelty. The libel cannot be sustained upon that ground. The cruelty, if it existed, was forgiven, and as a ground of divorce the allegation is quite too stale.

The desertion of which she complains has been already adverted to. If the case rested upon that, it would be necessary to enter into a more particular examination of the circumstances immediately preceding the time when the husband went to Ashburnham, and the correspondence between the parties respecting the wife's return, in 1838. A claim to a divorce on that ground would come somewhat late, but there is nothing except lapse of time to show any waiver of it. We are relieved from the necessity of commenting farther upon that part of the case, by the evidence relating to the remaining allegation of the libel.

It appears that the libellee, after his return from Ashburnham, employed a young woman to keep house for him. On the 19th of September, 1843, he married her at Andover. The additional evidence that there is an infant in the house is not necessary to substantiate the allegation of adultery.

The answer to this is, adultery on the part of the libellant. The evidence leaves as little doubt of that fact; and it might have furnished some excuse for the treatment of which she complains, were it not for other evidence, which, if it does not show that he is entirely responsible for it, proves conclusively that he is not entitled to complain of it. It took place long anterior to the separation; before June, 1834. Upon this part of the case she testifies that one Cheney was at work for the libellee; that at tea they had much indecent conversation; that in the evening her husband took her aside, and told her that he had made a bargain with Cheney that he should stay with her that night, and that Cheney was to give him a scythe and snath; and that he that evening left her with Cheney alone, (excepting her small children) and unprotected; that Cheney told her the bargain, and asked her what she said to it, and when she replied, " How can I !" he said her husband told him he would not trouble him about it. These particulars do not bear the semblance of a fabrication. But when we turn to the deposition of the libellee himself, the confirmation is complete. He admits that he had some conversation with Cheney in the field about the scythe and snath, but says it was only *in fun!* He does not state what that conversation was. He says he never received a scythe " in consideration that he might stay with my wife," but he does not deny the bargain. The admission is quite enough. He that will make bargains involving his wife's chastity, " in fun," has himself no good reason for complaint if they are consummated in earnest. But the evidence taken together fails to support the pretext of a jest, sorry as such a jest would appear; and, if he had applied for a divorce immediately after the occurrence, upon the evidence just stated, the court must have refused it. But this is not all. He cohabited with her for years after she had been dismissed from the church on this account, upon her own

confession, of which he had full knowledge. The condonation, therefore, is most complete, even if he had not been the miserable pander to his own dishonor. That alone would have furnished another sufficient reason to bar him from any claim for a divorce at the time of the separation in 1837.

It is very clear that the adultery, thus procured and condonated, furnished no reason why he should leave her in 1837, and cannot now be set up by him, in bar of her allegation, founded on his subsequent offence, for which her residence in Boston does not appear to furnish a shadow of excuse. There is nothing in the evidence to show that she ought to have returned to him.

*Divorce decreed, with alimony, and an order that copies of the papers be furnished to the Attorney General.*